UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANTOINETTE CROUCH,
o/b/o N.U.J.,

                              Plaintiff,

        v.                                                    **DECISION AND ORDER**
                                                              17-CV-1227
NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                              Defendant.

## INTRODUCTION

Plaintiff, on behalf of her grandchild, N.U.J., challenges an Administrative

Law Judge's ("ALJ") determination that N.U.J. is not entitled to benefits under the Social

Security Act ("the Act"). Plaintiff alleges that N.U.J. has been disabled since April 1, 2013, due

to borderline intellectual functioning, speech delay, and attention deficit and hyperactivity

disorder ("ADHD"). Tr.[1] at 55, 180-85, 202. Plaintiff alleges that the decision of the

Administrative Law Judge ("ALJ") Susan G. Smith is not supported by substantial evidence in

the record and is based on erroneous legal standards, and that the Appeals Council erred in

disallowing new and material evidence of N.U.J.'s worsening disabilities.

Presently before this Court are the parties' competing motions for judgment on

the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 8, 13).

For the reasons set forth below, this Court finds that the decision of the Commissioner is

---

[1] "Tr." refers to the Social Security Transcript which appears at Docket No. 5.

supported by substantial evidence and consistent with applicable legal standards. Thus, the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is granted and Plaintiff's motion (Dkt. No. 8) is denied.

## PROCEDURAL HISTORY

On September 3, 2013, Plaintiff filed an application for Supplemental Security Income (SSI) benefits for N.U.J., which the Commissioner of Social Security denied on February 4, 2014. Tr. at 55, 104. Upon Plaintiff's written request for a hearing, ALJ Smith held an administrative hearing on March 11, 2016, at which N.U.J. and her grandmother, who were represented by counsel, testified. Tr. at 55, 78-103. On June 20, 2016, the ALJ issued a decision finding that N.U.J. was not disabled. Tr. at 52-77. After the Appeals Council denied her request for review, Plaintiff filed the current action challenging the ALJ's final decision to the United States District Court for the Western District of New York on November 28, 2017. Dkt. No. 1. On June 19, 2018, Plaintiff filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. No. 8. Defendant moved for the same relief on December 14, 2018. Dkt. No. 13.

## DISCUSSION

**Standard of Review**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the district court must only decide whether the Commissioner applied the appropriate legal standards in evaluating the

plaintiff's claim, and whether the Commissioner's findings were supported by substantial

evidence in the record. *See Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir. 1983).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been

defined as "such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the Court finds no legal

error, and that there is substantial evidence for the Commissioner's determination, the decision

must be upheld, even if there is also substantial evidence for the plaintiff's position. *See Perez*

*v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d

376, 384 (W.D.N.Y. 2015). Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*,

685 F.2d 60, 62 (2d Cir. 1982).


**Standard for Disabled Child's SSI Benefits**

   An individual under the age of 18 is considered disabled when he or she

"has a medically determinable physical or mental impairment, which results in marked and

severe functional limitations, and which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

§ 1382c(a)(3)(C)(i). The Commissioner has established a three-step sequential evaluation

process to determine whether a child is disabled as defined under the Act. *See* 20 C.F.R.

§§ 416.924 (a)-(d).

First, the ALJ determines whether the child is engaged in any substantial gainful activity. 20 C.F.R. § 416.924(b). Second, if the child is not engaged in any substantial gainful activity, the ALJ determines whether the child has a medically severe impairment or combination of impairments that cause "more than a minimal functional limitation." 20 C.F.R. § 416.924(c). Third, the ALJ determines whether the child's severe impairment(s) meets, medically equals, or functionally equals the criteria of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). *See Conlin*, 111 F. Supp. 3d at 384-85.

Where an impairment medically meets or equals a listed impairment, the child will be found disabled. 20 C.F.R. § 416.924(d)(1). If a child's impairment or combination of impairments does not meet or equal a listed impairment, the ALJ must assess all functional limitations caused by the child's impairments in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating to others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926(a), (b)(1). A child is classified as disabled if he or she has a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. §§ 416.926a(d). "A 'marked' limitation exists when the impairment 'interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities.'" *Hart v. Colvin,* No. 12-CV-1043-JTC, 2014 WL 916747, at *3 (W.D.N.Y. Mar. 10, 2014) (citing 20 C.F.R. § 416.926a(e)(2)(i)). "An 'extreme' limitation is an impairment which 'interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities.'" *Id.* (citing 20 C.F.R. § 416.926a(e)(3)(i)).

**ANALYSIS**

Applying the three-step evaluation in the instant case, the ALJ determined

that: (1) N.U.J. had not engaged in substantial gainful activity since September 3, 2013, the

application date (Tr. at 58); (2) N.U.J.'s developmental/cognitive delay, mood dysregulation,

and ADHD were severe impairments (Tr. at 58); and (3) N.U.J. did not have an impairment or

combination of impairments that met or medically equaled an impairment contained in the

Listing of Impairments (Tr. at 58-60). Assessing the impact of N.U.J.'s impairments in the six

relevant domains, the ALJ concluded that her deficits did not functionally equal a listed

impairment. Tr. at 60-73. The ALJ started with the premise that N.U.J. was a preschooler

when her grandmother filed the application for benefits and was a school-aged child at the time

of the decision. Tr. at 58. She determined that N.U.J. had a less than "marked" limitation in

the domains of acquiring and using information, attending and completing tasks, and

interacting and relating to others, and no limitation in the domains of moving about and

manipulating objects, health and physical well-being, and ability to care for oneself. Tr. at 60-

71. Thus, the ALJ concluded that N.U.J. was not disabled and was not entitled to benefits. Tr.

at 73.

Plaintiff argues that the ALJ did not properly evaluate the medical and

"other source" opinions. Dkt. No. 8-1, pp. 14-20. Plaintiff assigns two specific errors to the

ALJ's opinion analysis. First, the ALJ "failed to weigh" the well supported opinions of N.U.J.'s

Licensed Speech Therapist Melinda Kaczmarek, Special Education Teacher Eileen Freeman,

Speech-Language Program Manager Susan Renken-Mintzer, School Psychologist Maria Van

Remmen, and Licensed Mental Health Counselor Catherine Broom, who all assessed N.U.J.

as having moderate to severe delays, and did not give sufficient weight to N.U.J.'s preschool Special Education Teacher Joseph Marshall.  Dkt. No. 8-1, pp. 14-15.  Second, the ALJ gave undue weight to the "stale" opinion of the consulting psychologist, Dr. Terri Bruni.  Dkt. No. 8-1, pp. 14-15.  Plaintiff also argues that in evaluating N.U.J.'s functioning in the various domains, the ALJ failed to consider what limitations N.U.J. would have had without the supportive services provided to her in school.  Dkt. No. 8-1, p. 21.  Finally, Plaintiff argues that the Appeals Council erroneously "disallowed" "new and material evidence" that was probative of N.U.J.'s ADHD and "behavioral disorders."  Dkt. No. 8-1, p. 29.

**"Other Opinion" Evidence**

Plaintiff contends that the ALJ's failed to assign a specific weight to Mrs. Kaczmarek, Mrs. Freeman, Mrs. Renken-Mintzer, Mrs. Van Remmen, and Ms. Broom's opinions.  While it is true that the ALJ does not explicitly weigh these opinions, this failure does not warrant a remand for several reasons.

First, it is clear from ALJ Smith's decision that she considered all of these reports in determining N.U.J.'s deficits in the various domains.  The ALJ cited to Ms. Kaczmarek and Mrs. Freeman's opinions (Exhibits 1F and 3F), and made note of specific findings from their reports, namely, that N.U.J. had delayed language, but was a happy girl who was able to ask questions, engage in conversation, make requests/comments, and take turns in conversation.  Tr. at 61, 266-70, 276-79.  ALJ Smith cited to Ms. Renken-Mintzer's report (Exhibit 4F) in support of her conclusion that "the objective evidence fails to indicate

listing-level severity of developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity." Tr. at 59-60, 64, 280-283.

ALJ Smith discussed Mrs. Broom's report (Exhibit 15F) at length, noting that the "counseling sessions [with Mrs. Broom] were driven by the grandmother's description of the severity of the claimant's behavioral issues, which is not consistent with the record." Tr. 61, 63-66, 68-69. ALJ Smith cited the grandmother's admission that N.U.J.'s mother and great-grandmother, who also shared responsibility for raising N.U.J., "were inconsistent with behavioral expectations and discipline . . . ." Tr. at 63. Likewise, ALJ Smith noted that Mrs. Van Remmen's report that N.U.J. was doing better in a small classroom, was easily redirected, and no longer experienced tantrums was "inconsistent with her grandmother's testimony." Tr. at 62.

"When [as here] . . . the evidence of record permits us to glean the rationale of an ALJ's decision," a court need not remand a social security case for "further findings or a clearer explanation." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1981); *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted."). That is, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault*, 683 F.3d at 448 (citing *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir. 1998)).

Secondly, the ALJ was well within her discretion to accept or reject the

opinions of Mrs. Kaczmarek, Mrs. Freeman, Mrs. Renken-Mintzer, and Ms. Broom because

they are not considered acceptable medical sources under 20 C.F.R. § 416.913(a), and

therefore, their opinions are not entitled to controlling weight. *Piatt v. Colvin,* No. 13–CV–6436

EAW, 80 F. Supp. 3d 480, 493, 2015 WL 274180, at *12 (W.D.N.Y. Jan. 22, 2015); *Conlin ex*

*rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 386-87 (W.D.N.Y. 2015) (stating that "[i]t is well

established that teacher questionnaires are considered valid 'other source' opinions").[2]

Ultimately, the ALJ is "free to decide that the opinions of 'other sources' . . . are entitled to no

weight or little weight . . . ." *Oaks v. Colvin,* No. 13-CV-917-JTC, 2014 WL 5782486, at *8

(W.D.N.Y. Nov. 6, 2014) (quoting *Sears v. Astrue,* No. 2:11–CV–138, 2012 WL 1758843, at *3

(D. Vt. May 15, 2012)); *Conlin*, 111 F. Supp. 3d at 386. Nearly all of the opinions cited by

Plaintiff were rendered before N.U.J.'s alleged onset date by practitioners with whom she did

not have a long-standing treatment relationship. Moreover, N.U.J. was very young, between 3

and 4 years old, during these assessments.

Finally (and perhaps most importantly), even if the ALJ had given

substantial weight to the cited opinions, it would not have compelled a finding that N.U.J. was

disabled. To the contrary, Mrs. Kaczmarek opined that N.U.J. was only moderately delayed in

receptive language and speech production and mildly delayed in expressive language. Tr. at

270. Mrs. Freeman found that N.U.J. had only mild to moderate delays cognitively,

academically, physically, and adaptively. Tr. at 278. She found severe delays in social and

---

[2] Mrs. Van Remmen, a school psychologist, is considered an acceptable medical source under 20 C.F.R.
§ 404.1513(a)(2).

emotional skills based exclusively on N.U.J.'s grandmother's responses, which the ALJ found

were inconsistent with the record as a whole.  Tr. at 276-79.  Ms. Renken-Mintzer, as the

Buffalo Hearing and Speech Program Manager (overseeing Mrs. Kaczmarek and Mrs.

Freeman), reiterated these relatively unremarkable[3] findings in her report.  Tr. at 281-83.  Mrs.

Van Remmen noted in her report that N.U.J.'s teacher had not observed the "severe

behaviors" reported by her grandmother in school.  Tr. at 351.  Indeed, James Balcerzak, Ed.

D., who examined N.U.J. around the same time, noted that while N.U.J. had "borderline

intelligence" and delayed development based on testing, her "interactions with me were

positive," she engaged in "appropriate imaginative play" while he spoke to her grandmother,

and "did not interrupt or disturb us."  Tr. at 272.  N.U.J. is a "friendly and cooperative

youngster," Dr. Balcerzak opined, "[t]he entire examination was completed without difficulty."

Tr. at 273.


**Consultant Examiner's Opinion**

Plaintiff argues that the ALJ relied too heavily on the "stale" opinion of the

consulting examiner, Dr. Bruni (Tr. at 106-112), rather than the opinion of N.U.J.'s Pre-

Kindergarten Teacher Mr. Marshall (Tr. at 209-16, 309).  This Court disagrees for several

reasons.


As previously noted, teacher opinions are not entitled to controlling weight, so the

ALJ was free to assign lesser weight to Mr. Marshall's opinion about N.U.J.'s limitations.

---

[3] Other than the "severe delay" in social emotional skills based solely on N.U.J.'s grandmother's representations of her behavior at home, the objective tests revealed only mild to moderate delays.  Tr. at 281-83.

*Conlin*, 111 F. Supp. 3d at 386-87 (W.D.N.Y. 2015). ALJ Smith fully explained her reasons for giving Mr. Marshall's teacher questionnaire only "partial weight." Tr. at 64, 209-216. Specifically, she found that Mr. Marshall "overstat[ed] the severity of the claimant's limitations" based on "statements from the claimant's grandparents." Tr. at 64. Moreover, Mr. Marshall contemporaneously reviewed N.U.J.'s academic and behavioral functioning and concluded that N.U.J. was showing "improvement in her ability to attend to and participate in group activities" and "her ability to interact with and gain attention from adults in a positive manner." Tr. at 309. Given Mr. Marshall's status as an "other source" and the apparent inconsistencies between his two opinions, the ALJ appropriately afforded his teacher questionnaire only "partial weight."

In contrast to Mr. Marshall, as a licensed psychologist, Dr. Bruni is an acceptable source of medical information, whose conclusions (the ALJ found) were consistent with the record as a whole. 20 C.F.R. § 404.1513(a), 416.913(a). *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (holding that "the opinion of a non-examining medical source can constitute substantial evidence where it is consistent with the other medical record evidence"). Regarding Plaintiff's argument that Dr. Bruni's February 2014 opinion was "stale" by the time the ALJ rendered her decision, this Court does not agree. Dr. Bruni's assessment is more recent than any of the opinions cited by Plaintiff, including Mr. Marshall's November 2013 opinion. Tr. at 105-112, 209-216. More importantly, it is clear from ALJ Smith's decision that she considered numerous educational records from 2016 and found that they were consistent with Dr. Bruni's opinion that N.U.J. has mild problems with acquiring and using information, a short attention span, and seeks adult attention, "but is easily redirected" and "enjoys working

with other people and being successful." Tr. at 64. For these reasons, this Court finds no error in the ALJ's treatment of Dr. Bruni's opinion.

**Substantial Evidence Supports the ALJ's Conclusion**

At her hearing, Plaintiff's attorney argued that N.U.J. has marked limitations in the areas of attending and completing tasks, interacting and relating with others and "arguably" acquiring and using information. Tr. at 83. The domain of acquiring and using information concerns itself with how well a claimant acquires or learns information, and how well that person uses the information that they have learned. 20 C.F.R. § 416.926a. In determining a child's ability in the domain of attending and completing tasks, an ALJ considers how well a child is able to focus and maintain his or her attention, and how well he or she begins, carries through, and finishes activities. 20 C.F.R. § 416.926a. Lastly, in determining whether a child is delayed in the area of interacting and relating to others, an ALJ considers "how well [the child] initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [his or her] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." 20 C.F.R. § 416.926a

There is substantial evidence in the record to support the ALJ's conclusion that N.U.J. had less than marked limitations in all of these domains. Tr. at 65-69. In addition to the numerous opinions cited above which report only mild to moderate delays, N.U.J.'s more recent records show an improvement in each domain. For example, regarding acquiring and using information, Speech Therapist Amy Atwater opined in 2014 that N.U.J.'s receptive,

11

expressive, and speech skills appeared to be within functional limitations.  Tr. at 315.  In

January 2016, the school reported that she was "progressing gradually" in her academic

subjects, meaning that she was making less than anticipated progress but that is was still

possible for her to meet her goal.  Tr. at 243.  Likewise, N.U.J.'s 2016-2017 IEP states that she

has only moderate delays in receptive language and auditory language processing.  Tr. at 248.

These reports are consistent with a less than marked limitation in acquiring and using

information.

N.U.J.'s abilities in the domain of attending and completing tasks, the

primary concern of N.U.J.'s grandmother, also appear to have improved with age.

Recognizing that N.U.J.'s ADHD was one of her most serious impediments, the ALJ

nonetheless noted that she was easily redirected when she went "off task" in the classroom.

Tr. at 67.  In her 2016-2017 IEP, N.U.J.'s teacher opined that she "puts forth a lot of effort in

the classroom especially when working in a small group."  Tr. at 250.  The ALJ noted that

N.U.J.'s doctors had prescribed Adderall for her reported inattention and restlessness (Tr. at

329), but her grandmother discontinued the medication for some unspecified reason (Tr. at

67).  *See Wynn v. Comm'r of Soc. Sec.*, No. 1:17-CV-01316 EAW, 342 F. Supp. 3d 340, 351-

52 (W.D.N.Y.  2018); *Pulos v. Comm'r of Soc. Sec.*, No. 1:18-CV-00248 EAW, 2018 WL

5801551, at *4 (W.D.N.Y. Nov. 5, 2018) (holding that the ALJ, in proceeding to obtain Social

Security disability insurance benefits, properly considered claimant's non-compliance with her

doctor's suggested diabetes treatment in finding that claimant was not entirely credible).  ALJ

Smith also noted that N.U.J.'s problems in this domain were aggravated by "trouble with

inconsistent guidance at home."  Tr. at 67, 355.

There was ample evidence that N.U.J. was doing well in the domain of interacting and relating with others, notwithstanding her grandmother's claims to the contrary. For example, in 2016, N.U.J.'s teacher observed that she "has a group of friends in her class and enjoys playing and working with them," and that "she enjoys being the teacher when writing the problems or words on the whiteboards to show her friends." Tr. at 250. ALJ Smith noted that, according to her teachers, N.U.J. played cooperatively with other children, was making and keeping friends, using language appropriate to the situation and listening, and getting along with adults and teachers. Tr. at 69. She also noted that N.U.J. "participates in an after school program at the YMCA without difficulty." Tr. at 69. The ALJ explicitly found that "the treatment notes and teachers' evaluation of the claimant's progress do not support that the claimant threatens or becomes angry with others." Tr. at 69. This constitutes substantial evidence that N.U.J. has a less than marked limitation in this domain.

Plaintiff argues that the ALJ failed to consider that N.U.J.'s improvements in behavior occurred only in structured special education settings. Dkt. No. 14, p. 6. This is simply not the case. The ALJ cited to numerous assessments that occurred outside of the classroom context, including Dr. Balcerzak's report, detailed herein, where he explicitly states that N.U.J. "did not interrupt or disturb" him while he spoke with her grandmother and was "friendly and cooperative." Tr. at 273. She also noted that none of the professionals who assessed N.U.J. observed any of the behaviors that the grandmother reported at home. In this regard, the ALJ did consider how N.U.J. functioned outside of the classroom, but ultimately found that N.U.J.'s behaviors were not as severe as her grandmother represented.

After carefully examining the administrative record, this Court finds that

substantial evidence supports ALJ Smith's decision, including the objective medical evidence

and opinions discussed herein. This Court is satisfied that the ALJ thoroughly examined the

record and afforded appropriate weight to all of the evidence in rendering her decision that N.U.J.

is not disabled within the meaning of the Act.

**Substantial Evidence Supports the Appeals Council's Review**

Plaintiff argues that the Appeals Council "failed to account for new and material

evidence" she submitted after the ALJ rendered her decision, which she claims "directly

contradicts" the ALJ's findings. Dkt. No. 8-1, p. 28. After a decision is rendered, the Appeals

Council may consider additional evidence if it relates to the period on or before the date of the

hearing decision and there is a reasonable probability that it would change the outcome of the

decision. 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). This Court must consider whether the

new evidence adds so much as to make the ALJ's decision contrary to the weight of the

evidence. *Bushey v. Colvin*, 552 F. App'x 97, 98 (2d Cir. 2014) (holding that "[t]he Appeals

Council had substantial evidence supporting its decision to decline review, as the new

evidence that [claimant] presented did not alter the weight of the evidence so dramatically as

to require the Appeals Council to take the case").

This Court finds that Plaintiff's newly admitted evidence (from the 2016 school

year following the ALJ's June 2016 decision) failed to meet that standard because it actually

shows improvement in N.U.J.'s functioning. Put another way, the evidence did not meet the

materiality standard because it did not reveal that N.U.J.s' condition was more serious than

previously thought." *Klos v. Comm'r of Soc. Sec.*, 439 F. App'x 47, 48 (2d Cir. 2011); *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). Accordingly, the Appeals Council did not err in its treatment of the post-decision evidence.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision is not legally flawed and is based on substantial evidence.

Accordingly, IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that Defendant's Cross-Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

DATED:     Buffalo, New York
              March 22, 2019

                                        *s/ H. Kenneth Schroeder, Jr.*
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**